O’Neadd, J.
The act of 1192, 1st Faust, 210, provides, “that all marriage contracts, deeds, and settlements, to be made after the first day of June next, shall therein describe, specify, and particularize the real and personal estate thereby intended to be included, comprehended, conveyed, *144 and passed, or shall have a schedule thereto annexed, containing a description and the particulars of the' real and personal estate intended to be conveyed and passed by such marriage contracts, deeds, and settlements ; 'which said schedule shall be thereunto annexed and signed, executed and delivered by the parties therein interested at the time of the signing, executing, and delivering the said marriage contracts, deeds, and settlements, and be subscribed by the same witnesses who subscribed the said marriage contracts, deeds, or settlements, and shall be recorded therewith, otherwise, and in default of such schedule, and recording thereof *as aforesaid, the said marriage contracts, deeds, ° -* and settlements-.shall be, and are hereby deemed and declared to be fraudulent, and null and void with respect to and against creditors and bona fide purchasers and mortgagees: provided, that where any marriage settlement shall be made previous to marriage, nothing herein contained shall be construed to extend to make the property settled thereby liable in default of a schedule, or not being duly recorded, to the payment of any debts contracted by any husband previous to such marriage, but only to such debts and contracts as shall have been incurred and made by the said husband subsequent to the marriage taking place.” The result of the case under this legal provision depends upon the ques- ' tion whether the marriage settlement bond, as it is called in the decree, was executed and recorded in conformity to the act, so as to make it a good and valid antenuptial marriage contract as against subsequent creditors. For the deed of marriage settlement, executed according to the stipulations of the bond, was not lodged to be recorded in the Secretary of State’s office until long after the time limited by the act of ’85, and is therefore void as against the creditors of the husband. So that it is necessary to look back to the marriage contract. It is in all respects well executed and recorded, except as to the schedule, which is annexed to the bond; but it is not signed by the parties, nor subscribed by the witnesses who subscribed the bond. These defects, according to the plain words of the act, render the contract void as against subsequent creditors. There is no room in the construction of the act to say that it has been substantially complied with, and its ends answered, and therefore that the execution is sufficient. For the legislature have excluded all construction by a supposed intention by the use of plain words, declaring that if the contract wanted any of these requisites it should be void. In the construction of a statute, I know no rule more safe than to adhere to the sense of the legislature as manifested by the plain and literal meaning of the words used. To adopt any other rule would be to legislate, not to construe. But if it be necessary to look beyond a plain reading of the act, and to give construction to it, by something else than the literal meaning of the words used, I think there will be no difficulty in arriving at the same conclusion by other means. I think with the Chancellor that were it not for the act, that the annexation of the schedule to the bond and reference to it therein would make it a part of it, and the *execution of the bond would cover the schedule: the *183] act excludes this construction, by not only directing it to be annexed, but also that it shall be signed, executed, and delivered by the parties, and subscribed by the same witnesses who subscribe the contract. This shows that notwithstanding its annexation, the legislature regarded *145 it as a separate and distinct instrument from that to which it was annexed. We are therefore not at liberty to make the execution and attestation of the bond, the execution and attestation of the schedule. However unreasonable this may appear on the first blush, yet, on reflection, it will be seen that the legislature may be very well justified in adopting such provisions. Their object was to prevent the possibility of frauds in the execution of marriage settlements. A schedule annexed by tape, or seals, or wafers, might easily be removed and another substituted, if it had neither the signatures of the parties, nor the attestation of the witnesses to identify it and to prevent substitution. Such a possibility most probably induced the legislation in this respect: and on some other occasion we may admire more this legislative forecast, than we are now disposed to condemn it as unnecessary and hard legislation.
I am hence satisfied that the marriage settlement bond or contract is void, and cannot protect the property attempted to be settled from the payment of the debts due by Milward Pogson to the plaintiffs. For, as the learned Chancellor thought, (although he suffered his sympathies for Mrs. Pogson and her children to lead Mm to a different conclusion,) it is a refinement not to be sustained, to contend, that notwithstanding the marriage contract is void, as against creditors, that yet being good between the parties, it will prevent the husband’s marital rights from attaching on the property, and thus save it from being made liable to pay the husband’s debts. The contract is void as against the creditors; as against them it is the same as if none existed, and the wife’s property is, so far as they are concerned, in the possession of the husband, without any thing to prevent all his legal rights from arising in and attaching to it. Her real estate is his during coverture, and her personal property vests in him jure mariti. For the marriage contract cannot even be read against his creditors. These views would make the corpus of the estate liable to the plaintiffs’ demands ; but as they are content with the Chancellor’s decree against the income, there is no necessity to give them any further remedy. It *is ordered that Chancellor De Saus- r*ig4 sure’s decree be affirmed. *-
Johnson, J., and Harper, J., concurred.